May it please the Court, my name is Mark Caldwell. I'm representing Ms. Willis this morning. With the Court's permission, I would like to reserve two minutes for rebuttal, if I may. There are several issues in this case. The one that I think is of first impression in this circuit is whether an administrative law judge is justified in relying upon opinions of physicians who have never treated the claimant, have never examined the claimant, have never spoken to the claimant, have never listened to the claimant's testimony, and were not called by the ALJ to testify at the hearing, even though a request for subpoena was filed and the forms containing those opinions were objected to at the time of the hearing. Instead, we have the opinion of a psychologist who actually examined the claimant, Dr. Webster. That opinion led to uncontradicted vocational expert testimony that a person so limited could perform no work. The other problem we have in this case that I think is something that is repeated over and over in many of these cases is the ALJ, who is a person trained in the law, acting as her own expert witness in the field of medicine, in this case psychiatry. The ALJ chose to disregard the vocational expert's opinion based on Dr. Webster's assessment because of her own independent opinion that Dr. Webster's narrative report, and I'm quoting, was more in line with the claimant's overall mental status, end quote. That's a medical opinion. That's not a legal opinion. And whatever the ALJ's qualifications may be in terms of the law, she's entirely unqualified in terms of medicine. She's also wrong. As I pointed out by citing some psychiatric texts in my brief, the ALJ was comparing apples and oranges. Dr. Webster said that the claimant's cognitive functions, thought processes, judgment, insight were intact. That's one category. On the other hand, the claimant suffered from a major mood disorder, namely a pain disorder, among many other diagnoses that Dr. Webster gave. That's an emotional disorder. One is thinking. The other is feeling. So the judge created, essentially, by way of her own independent medical opinion, a contradiction in the record that simply did not exist. Furthermore, the ALJ mischaracterized Dr. Webster's report. In her decision, the ALJ stated that no examining doctor had imposed limitations secondary to pain. Dr. Webster's primary diagnosis was pain disorder. That is flat-out contradicted by the record. And with all due respect, the commissioner here continues to mischaracterize Dr. Webster's report when the commissioner says that Dr. Webster's limitations did not preclude, quote, simple work, end quote. Could you tell me what it is in Dr. Webster's report that you rely on? Primarily, I am relying on his assessment of limitations. What is wrong with the person is — Well, I have the report here in front of me. Can you point to me in the report what it is? Is there a specific language in the report? I think primarily what I focus on in Dr. Webster's report is his discussion of the claimant's pain. And he says pretty much throughout his report — Just to make sure we're on the same page, I'm on Excerpts of Record, page 4. Good. Thank you. The report dated Monday, February 23rd. Is that the — that's the report you're referring to and relying on? Yes. Okay. Correct. One thing that I think is significant in Dr. Webster's report — and by the way, this also differs from the opinions of the State agency physicians because all they referenced was Dr. Webster's report — is Dr. Webster looked at all of the records, apparently, and noted something that was quite significant. Even the physical medicine doctors who the claimant was not consulting for purposes of mental health saw that her depression was so significant that Dr. Ott, for example, an orthopedic surgeon, says her depression appears to be the more dominant syndrome. That's, to me, very, very telling. Yeah, I read that, but I'm not interested for the moment. I read that in Dr. Ott. I'm interested in the moment, though. What is it in Dr. Webster's report that you rely on? Primarily, what I'm looking at is what he has as his mental status examination. Yes. And he notices that that led to these various diagnoses. I really don't know what more I can say in terms of Dr. Webster's opinion because he has a seven-page, single-spaced opinion here. But he goes through all of the records. But that's exactly my problem, and I'm trying to help you help me. I've read every word of it, and I'm trying to figure out where in this is a straightforward diagnosis that says that she is so depressed that she cannot work or she is in such pain that she cannot work. I don't find that, but it may be in there, and I might have missed it. I think it's his primary diagnosis. His primary diagnosis, I'm quoting directly, pain disorder due to psychological factors in a general medical condition. He also goes into other things. But, of course, that's underneath the heading of diagnostic possibilities. Correct. It doesn't say this is the diagnosis. He also has under diagnostic possibilities cocaine dependence, depressive disorder. He's got a lot of diagnostic possibilities. Sure. Let's go back to the cocaine dependence. Note that it says in sustained remission. Yeah, no, I understand. But I'm just saying the heading for all these things is possibilities. Sure, and I think that's very fair. And I think it's foolish for, especially in the area of mental health, for a psychologist or a psychiatrist to say this is it. Unlike orthopedic surgery, for example, where you can look at an X-ray and say, well, here's a fracture, the area of mental health isn't as clear cut as that. I think the psychologist is simply being fair when he says these are the various diagnostic possibilities. Okay. Does that answer your question? Thank you. Okay. But I do think that it is important that the commissioner is simply factually incorrect when the commissioner represents that Dr. Webster allows simple work. It's quite the contrary. The ALJ's rationale for rejecting Dr. Webster's assessment was that there was no mental health treatment. Let me point out that in this one area, the agency did it right. That's the reason for a consultative examination. And the regulations on that are 404.1512, 1517, 1519. You wouldn't notice from reading either the district court's commission or the commissioner's brief, but the claimant requested subpoenas of the non-examining state agency physicians. With all due respect, I think this is due process 101. Requesting subpoenas of a physician who renders an opinion, the ALJ relies upon that opinion, yet denies the right of cross-examination, that's a fundamental error in this case. I do see that I'm coming up on my two minutes, and with the court's permission, I'd like to reserve that time. That's fine. Thank you for your argument. Thank you. We'll hear from the commissioner at this time. My name is Deborah Meacham. I represent the Commissioner of Social Security in this case. The plaintiff's appeal in this case revolves primarily around her mental impairment, so I'm going to focus my comments on that. All of the arguments raised by the plaintiff ignore one very, very basic maxim in the administrative law area, and that is the determination of a claimant's residual functional capacity is for the ALJ to make based on all of the evidence before him, medical and non-medical. And the record in this case was replete with evidence that this claimant's mental impairments were not so disabling to render her unable to work or disabled within the meaning of the Social Security Act. And all of this evidence was considered by the ALJ and in the record before him. Specifically, the claimant testified that she had been depressed long before her back injury, and during the time when she worked at a semi-skilled position as a financial aid, she said that her depression caused only a limitation or a stress level in working around people. And that particular limitation was incorporated into the ALJ's assessment of her RFC, limiting her to unskilled work in a non-public setting. Who was the ALJ in this case? Joan, I'm sorry, I don't have the name. Your opponent is correct in referring to the ALJ as she. Yes, yes. So essentially, all of this non-medical evidence was properly considered by the ALJ in assessing this claimant's residual functional capacity. Why not subpoena these non-treating, non-examining? Well, pursuant to the regulations, the ALJ has the authority to run the hearing, and it's at the ALJ's discretion to subpoena witnesses and call witnesses. The standard that is used is whether or not the requested evidence or the requested testimony would be redundant or whether it would add anything to the record. How can an ALJ make that judgment, especially where she later relies on the uncross-examined testimony of people who never treated and never saw this claimant? Well, pursuant to the regulations and the Social Security rulings, the non-examining. You would agree that the process clause of the Constitution overrides any regulation. That's what I'm interested in. Yes, yes, it does. But to answer your question about the ALJ considering that opinion, I think that the opinion of the non-examining medical sources in this case was one of many factors considered by the ALJ in assessing this claimant's functional capacity. But what harm would come from allowing these experts to appear at the hearing and subject their testimony to cross-examination? That's what truth-seeking is all about, isn't it? You're right, and I don't think that any harm would come of it. I think it's a standard that has been common in the regulations that the ALJ can, at his discretion, decide whether or not that testimony would offer additional evidence or be redundant to what's before the court or before the ALJ at the hearing. Can you imagine an appellate court sustaining a civil or criminal judgment in which this occurred? Where a lawyer, where the finder of fact relied upon expert testimony, where medical or psychological condition was the heart and soul of the case, and they rely upon written reports of people who have never seen the plaintiff or claimant, never treated them, and the other side wants them on the stand for cross-examination. Can you imagine a civil judgment or criminal judgment that would be sustained by an appellate court in that situation? I think the situation that you're describing would be a little different because it would be a decision decided exclusively on the evidence. Okay, it's a personal injury case and liability is conceded. Let's take the civil case. It's a personal injury case, liability is conceded, and it's a bench trial, and the judge decides, you know, I don't need to hear from these witnesses. I've read their report. I'm just going to rely upon that, and I'm going to deny the request of the plaintiff's counsel that they appear and be cross-examined. Can you imagine a civil judgment being sustained on that basis? I think you're right in that situation where the judge would be relying solely on that evidence that that individual should be called. In the administrative arena, in the Social Security cases, as I said, it's just one factor, and the ALJ looks at everything. I don't think he relied exclusively on that. He didn't look at everything, did she? She looked specifically at all of this non-medical evidence of records. She looked at the fact that this person had no treatment and no medications for her allegedly disabling depression, and that she had left her last job not because of any mental impairment or depression. She left her last job because of cocaine abuse and an absentee problem. Could Social Security adopt a regulation that prevented the plaintiff's attorney from making a presentation at all? Could they adopt such a regulation? I do not believe so. Could they limit what counsel could do for a claimant? You can't call this witness or that witness or this witness without good and sustainable reason? I do not believe so. The regulations provide that the ALJ has the discretion, but only in certain situations where so. They also have the discretion to consider what evidence they will receive or not, but it's just unimaginable to me. I'm just one judge. You know, we don't confer before we come out on the bench. It's just unimaginable to me that you could have a proceeding like this and that the Social Security would acquiesce in such a proceeding. What was the position of the government when this happened? That it was okay to do this? What happens when the person was examined? At the hearing when the ALJ announced or denied the claimant's attorney's request that these witnesses be called and subjected to cross-examination. The ALJ responded to plaintiff's attorney by saying that he would give the reports of the non-examining physicians the weight they deserve under the regulations. And under 404.1527, the reports of non-examining reviewing physicians who look at all of the medical evidence when a claimant files for disability are entitled to significant weight, particularly when they're supported by other evidence in the record. It's also something that in the Social Security rulings and in case law, Peral is, I believe, cited in our brief United States Supreme Court case, that allows the agency to consider these as expert opinions. And again, it is only one factor. It is not controlling, and it is weighted and compared to all of the other evidence in the record, objective medical findings and the non-medical evidence. And all of this is for the ALJ to consider in assessing whether or not a person is truly disabled within the meaning of the Social Security Act. I think we understand your argument. I don't see any other questions. Thank you for coming today. Thank you. We appreciate your argument. Rebuttal? Very little rebuttal, Your Honor. The problem with a lot of what we've heard this morning is its post hoc rationale. In reviewing the ALJ's decision, this Court must review the ALJ's decision as written. You know, pardon me for interrupting your rebuttal. I read your brief, and then I've been looking through it again this morning. This due process argument surprises me this morning. Could you show me where you make the due process argument in the brief? I might have missed it. I think. Because I'm not even sure what testimony you're talking about. Well, the testimony certainly is the testimony of the vocational expert, but the vocational. No, no, but you're talking about testimony that you wanted to have in so you couldn't cross-examine. Who are you talking about? I am talking about the state agency physician. Named. Well, that's interesting. The ALJ didn't even know the physician's name. Do you know the name? Sure, I do. Sandra Mahoney. Mahoney. Judge Knight thought it was Dr. Malone. It doesn't exist. Okay. Can you point to me where this argument, this due process argument is made? Well, it's always tough in a long brief, but let me go to the part that talks about the non-examining state agency physicians. Basically, we cite, Judge, you're really putting me on the spot here, but I think. Well, I am, because I can't, I don't recall having seen it. Let me find it. One of the things we talked about at some point in our brief, and I guess I'm just going to have to say I can't put my finger on it right away either, is we cite to Richardson v. Perales, which is the seminal Supreme Court case that says if you're going to rely upon opinions, I think it's more in the reply brief than in the opening brief, Judge. The reply? That if you're going to, it's on page 8 of the reply brief. If you're going to rely upon the opinions of non-examining physicians, you have to give the other side the opportunity to review what they had to say. But, you know, let's put, let me put the due process argument aside for one minute here, and I know I'm going over my time, Judge, but I want to try to respond to your question as best I can. Even if we put due process aside, the point remains that this Court has never, ever held that the opinion of a non-examining physician who doesn't testify at the hearing can be given any weight at all. This Court has specifically said that the opinion of a non-examining physician standing alone cannot constitute substantial evidence in support of an ALJ's decision for denial of benefits. So even if we have to skip over the due process argument, let me say one thing here. I didn't rely very strongly in my brief upon this request for subpoenas, and the reason I didn't is it's not essential to the Court's finding. Now, request for subpoena or no, this Court has never allowed what the ALJ has done in this case. So let me make it very, very clear here. If I was standing here today and I had not requested subpoenas of the non-examining State agency physicians, I would still be making the argument that a non-examining physician's opinion standing alone cannot be substantial evidence in support of an ALJ's decision. And let me make it clear to you, Judge Fletcher, that's my main argument. The business about the request for subpoenas and whatnot is sort of an aside. I think Judge Hawkins was right in sort of saying that, you know, it would be pretty surprising if the Court could uphold that. It's a basic tenet of constitutional law. But having said that, that's not the thrust of the case. The thrust of the case is a non-examining physician cannot be substantial evidence to support a denial of benefits. And the part of the ALJ's report or opinion that you're unhappy with then is on page – well, let's see. It's on page – her numbering, page 8 of her opinion then, talking about the – completed by Dr. Malone, who's in fact Dr. Mahoney. Correct. Okay. Correct. And the judge made it very, very clear at the hearing. She used the exact words, I'm basing my decision on, quote, the State agency limits. Nothing could be clearer. You're way over time. I know. I'm just trying to respond to your questions.  Thank you for your arguments. The case just argued will be submitted for decision. We'll proceed to the next.
judges: Hawkins, W.fletcher, King